TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00396-CV






Gene Tankersley, Appellant




v.




Cecil J. Crenwelge, Receiver, Appellee







FROM THE DISTRICT COURT OF SAN SABA COUNTY, 33RD JUDICIAL DISTRICT


NO. 6926-A, HONORABLE D. V. HAMMOND, JUDGE PRESIDING 







 Cecil J. Crenwelge, Receiver, sued the San Saba Bend Joint Venture ("Joint Venture") and
all individual joint venturers, including Gene Tankersley, for a deficiency on a note made payable to
Crenwelge's predecessor in the office of receiver. The trial court granted summary judgment in favor of
the Receiver. Tankersley appeals asserting five points of error. We will affirm.


FACTUAL AND PROCEDURAL BACKGROUND


 John Cook formed the Joint Venture to purchase, develop, and operate a particular
property that contained what was hoped to be a productive and profitable pecan grove. In order to
purchase this property, Cook executed a $550,000 real estate lien note ("Note") that was secured by the
property being purchased. The Note was signed by John Cook, individually, and by San Saba Bend Joint
Venture, acting by and through its managing venturer, John Cook. Although the date Cook signed the Note
was determined to be June 29, 1984, the Note was dated March 15, 1984.

 The Joint Venture Agreement ("Agreement") stated its effective date as June 15, 1984, and
was signed by nine individuals on dates ranging from June 26, 1984 to August 15, 1984. Tankersley signed
the Agreement on August 11, 1984.

 A few years later, the Venture defaulted on the Note, and the property securing the Note
was foreclosed on and sold at auction. After the property was sold, a deficiency of $329,913.10
remained. The Receiver brought an action to recover the deficiency against the Joint Venture and all joint
venturers individually. At all relevant times, the Joint Venture itself did not have sufficient funds to pay the
deficiency. The action against Tankersley was severed from the rest of the cause and pursued to summary
judgment against Tankersley for the full deficiency amount plus interest.

 Tankersley appeals asserting five points of error: (1) the application of Texas Uniform
Partnership Act, Tex. Rev. Civ. Stat. Ann. art. 6132(b), § 17 (West 1970) ("TUPA") requires reversal,
(2) Tankersley's liability should be limited to his pro rata share of the Joint Venture, (3) the sum due was
calculated erroneously, (4) the trial court erred in establishing the signing date of the Note as June 29, 1984,
and (5) the trial court erred by denying Tankersley's special exception to the Receiver's live pleading of
January 24, 1996.


DISCUSSION

 In reviewing a summary judgment, the following standards are employed: (1) the movant
for summary judgment has the burden of showing that no genuine issue of material fact exists and that he
is entitled to judgment as a matter of law, (2) in deciding whether there is a disputed material fact issue
precluding summary judgment, evidence favorable to the nonmovant will be taken as true, and (3) every
reasonable inference must be indulged in favor of the nonmovant. Nixon v. Mr. Property Management
Co., 690 S.W.2d 546, 548-49 (Tex. 1985).

 In his first point of error, Tankersley contends TUPA § 17 requires the reversal of the trial
court's judgment. Section 17 states: "A person admitted as a partner into an existing partnership is liable
for all the obligations of the partnership arising before his admission as though he had been a partner when
such obligations were incurred, except that his liability shall be satisfied only out of partnership
property." TUPA § 17 (emphasis added). A joint venture is generally governed by the same rules as a
partnership. 626 Joint Venture v. Spinks, 873 S.W.2d 73, 76 (Tex. App.--Austin 1993, no writ). The
key question in the present case is whether Tankersley was a late-entering member or an original member
of the Joint Venture.

 When interpreting agreements, we give language its plain, grammatical meaning unless it
definitely appears that to do so would contradict the intention of the parties. See Reilly v. Rangers
Management, Inc. 727 S.W.2d 527, 529 (Tex. 1987). Article 34 of the Agreement states: "The Joint
Venture Agreement is effective as of the 15th day of June 1984, regardless of the date of the actual
signature below." Tankersley does not address the effect of article 34, but instead assumes he is a late-entering venturer entitled to invoke the protections of TUPA § 17. For the reasons discussed below,
however, we conclude that Tankersley was an original venturer.

 Tankersley signed and dated the Agreement on August 11, 1984. The other eight venturers
also signed and dated their signatures to the Agreement, some before Tankersley and one after. Tankersley
and each of the other venturers initialed each page of the Agreement. (1) An interpretation of article 34
making Tankersley a late-entering venturer would ignore the word "Agreement" and mean that while the
Joint Venture itself was effective as of June 15, the Agreement was not effective as to each venturer until
the date of his or her signature. Such an interpretation would result in the Joint Venture's having no original
venturers, only late-entering venturers. This would undermine TUPA § 15, which holds venturers jointly
and severally liable for venture debts, because it would allow the creation of joint ventures (or partnerships)
with no original venturers (or partners). See Spinks, 873 S.W.2d at 75 (imposing liability on venturers who
signed agreement that had as its effective date the date of an earlier property purchase). Accordingly, we
conclude that Tankersley was an original member of the Joint Venture and that TUPA § 17 does not apply
to him. Point of error one is overruled.

 In point of error two, Tankersley asserts that his liability should be limited to his pro rata
share of the Joint Venture. In arguing this point, Tankersley presupposes that he is a late-entering venturer
and offers the approach, used by a Colorado federal district court, of imposing pro rata liability on late-entering partners. See Resolution Trust Corp. v. Teem Partnership, 835 F. Supp. 563 (D. Colo. 1993). 
As discussed above, however, Tankersley is an original member of the Joint Venture. All joint venturers
are jointly and severally liable for all debts and obligations of their joint venture. See TUPA § 15. 
Consequently, indemnification agreements and profit- or loss-sharing agreements between joint venturers
generally do not limit a venturer's joint and several liability to third parties such as the Receiver. See
Behannon v. Texas Ref. Co., 78 S.W.2d 1017, 1018 (Tex. Civ. App.--Beaumont 1935, no writ). Point
of error two is overruled.

 In his third point of error, Tankersley argues that the trial court erred in calculating interest
due on the note from March 15, 1984 instead of the date on which the transaction took place, June 29,
1984. He suggests that Danziger v. San Jacinto Sav. Ass'n, 732 S.W.2d 300, 302 (Tex. 1987), requires
the calculation of interest from the date the loan is actually made, not the date on the face of the note. That
case deals with consumer credit loans and Chapter Five of the Texas Consumer Credit Code. See Tex.
Rev. Civ. Stat. Ann. art. 5069-5.01 (West 1987). Chapter Five applies only to certain secondary
mortgage loans that do not pertain to the Note here. See id. Appellant presents no other reason that
prevents parties from agreeing to date a note earlier than the actual signing date as long as the resulting
interest rate is not usurious. See, e.g., R. V. Indus. v. Urdiales, 851 S.W.2d 306, 308 (Tex. App--San
Antonio 1992), rev'd on other grounds, 851 S.W.2d 216 (Tex. 1993). Point of error three is overruled.

 In point of error four, Tankersley maintains that the trial court erred in establishing June 29,
1984 as the date the Note was signed. His argument is that because the Note was dated March 15, 1984,
neither he nor the Joint Venture would be liable on the Note because the Joint Venture did not exist until
June 15, 1984 and did not otherwise ratify or adopt the liability. He suggests the affidavit of Will Adams
stating that the signing date was June 29, 1984, should be excluded as parol evidence attempting to vary
the date of the Note. Tankersley contends the signing date of the Note is a genuine issue of material fact
requiring reversal of the summary judgment.

 The parol evidence rule generally disallows extrinsic evidence which varies the terms of a
valid written instrument that on its face is complete, unambiguous, and finally integrated. See Reeves v.
Lago Vista, Inc., 497 S.W.2d 950, 953 (Tex. Civ. App.--Austin 1973, writ ref'd n.r.e.). One exception
to the rule is that extrinsic evidence is admissible to prove the true date of a writing regardless of any
statement of the date within the writing. See Magee v. Barnes, 135 S.W.2d 1038, 1039 (Tex. Civ.
App.--Waco 1940, no writ); cf. Lindsay v. Clayman, 254 S.W.2d 777, 779 (Tex. 1952) (parol
evidence rule does not operate to exclude statements which are mere recitals of fact). Accordingly, the
trial court could properly consider Adams's affidavit in ruling on the Receiver's motion for summary
judgment.

 The summary-judgment evidence shows conclusively that the Note was signed on June 29,
1984. Adams's affidavit testimony states he was present when the Note was signed and delivered on June
29, 1984. Adams also states the Note was dated March 15 so the purchaser would have the right to the
full pecan crop growing at the time of signing. Furthermore, the notary acknowledgments on the deed of
trust securing the Note and the deed conveying the property indicate the date June 29, 1984. The
recording certificate of the County Clerk of San Saba County on the deed indicates it was filed on June
29, 1984. The "Final Account" of Crenwelge's predecessor indicates the deposit of the down payment
for the real estate was made on the Monday following Friday, June 29, 1984.

 Tankersley asserts that the "Report of the Private Sale" indicates the transaction occurred
on April 26, 1984. However, as the Receiver points out, taken in context of the statutorily required
procedure in which a receiver must obtain court confirmation and approval before closing a private sale
of property, and considering that the "Order Confirming Sale of Real Estate by Receiver" was dated May
8, 1984, it is clear that the sale of the property could not have been closed in April. Because all evidence
indicates the Note was executed and delivered on June 29, 1984, and no evidence contradicts that
conclusion, we conclude the Receiver was entitled to summary judgment on the issue of establishing the
date on which the Note was signed. Point of error four is overruled.

 In his final point of error, Tankersley asserts that the trial court erred in denying his special
exception to the Receiver's trial pleading. He argues that the Receiver's fourth amended petition was
insufficient to support summary judgment because the Joint Venture Agreement itself was insufficient to
show his liability on the Note since he was not a member of the Joint Venture at the time the Note was
signed. Pursuant to our discussion of point of error one above, we conclude the trial court did not err in
overruling Tankersley's special exception; as an original member of the Joint Venture, Tankersley's
agreement to be jointly and severally liable for debts of the Joint Venture was effective two weeks before
the note was signed. 

 Furthermore, the partial summary judgment that held Tankersley liable as one of the joint
venturers was granted on August 8, 1995. Tankersley's special exceptions were not filed until August 25,
1995. Any defect in pleading is waived in a non-jury trial unless brought to the attention of the judge
before the judgment is signed. Tex. R. Civ. P. 90 (emphasis added). Thus, even if the pleading had been
defective, Tankersley waived this argument. Point of error five is overruled.


CONCLUSION

 Because appellant's points of error are overruled, we affirm the judgment of the trial court.



 

 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and Kidd; Chief Justice Carroll not participating

Affirmed

Filed: March 12, 1998

Do Not Publish

1. Tankersley and each of the others also signed and initialed each page of an "Acknowledgment of Joint
Venture Lien." There is no suggestion that Cook was not authorized to sign the Note on behalf of the Joint
Venture.


. App.--Austin 1973, writ ref'd n.r.e.). One exception
to the rule is that extrinsic evidence is admissible to prove the true date of a writing regardless of any
statement of the date within the writing. See Magee v. Barnes, 135 S.W.2d 1038, 1039 (Tex. Civ.
App.--Waco 1940, no writ); cf. Lindsay v. Clayman, 254 S.W.2d 777, 779 (Tex. 1952) (parol
evidence rule does not operate to exclude statements which are mere recitals of fact). Accordingly, the
trial court could properly consider Adams's affidavit in ruling on the Receiver's motion for summary
judgment.

 The summary-judgment evidence shows conclusively that the Note was signed on June 29,
1984. Adams's affidavit testimony states he was present when the Note was signed and delivered on June
29, 1984. Adams also states the Note was dated March 15 so the purchaser would have the right to the
full pecan crop growing at the time of signing. Furthermore, the notary acknowledgments on the deed of
trust securing the Note and the deed conveying the property indicate the date June 29, 1984. The
recording certificate of the County Clerk of San Saba County on the deed indicates it was filed on June
29, 1984. The "Final Account" of Crenwelge's predecessor indicates the deposit of the down payment
for the real estate was made on the Monday following Friday, June 29, 1984.

 Tankersley asserts that the "Report of the Private Sale" indicates the transaction occurred
on April 26, 1984. However, as the Receiver points out, taken in context of the statutorily required
procedure in which a receiver must obtain court confirmation and approval before closing a private sale
of property, and considering that the "Order Confirming Sale of Real Estate by Receiver" was dated May
8, 1984, it is clear that the sale of the property could not have been closed in April. Because all evidence
indicates the Note was executed and delivered on June 29, 1984, and no evidence contradicts that
conclusion, we conclude the Receiver was entitled to summary judgment on the issue of establishing the
date on which the Note was signed. Point of error four is overruled.

 In his final point of error, Tankersley asserts that the trial court erred in denying his special
exception to the Receiver's trial pleading. He argues that the Receiver's fourth amended petition was
insufficient to support summary judgment because the Joint Venture Agreement itself was insufficient to
show his liability on the Note since he was not a member of the Joint Venture at the time the Note was
signed. Pursuant to our discussion of point of error one above, we conclude the trial court did not err in
overruling Tankersley's special exception; as an original member of the Joint Venture, Tankersley's
agreement to be jointly and severally liable for debts of the Joint Venture was effective two weeks before
the note was signed. 

 Furthermore, the partial summary judgment that held Tankersley liable as one of the joint
venturers was granted on August 8, 1995. Tankersley's special exceptions were not filed until August 25,
1995. Any defect in pleading is waived in a non-jury trial unless brought to the attention of the judge
before the judgment is signed. Tex. R. Civ. P. 90 (emphasis added). Thus, even if the pleading had been
defective, Tankersley waived this argument. Point of error five is overruled.


CONCLUSION

 Because appellant's points of error are overruled, we affirm the judgment of the trial court.



 

 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and Kidd; Chief Justice Ca